IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

DONNA M. HANSEN                                    3:10-CV-3061-MA

       Plaintiff,                              OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

ARTHUR W. STEVENS, III
Black, Chapman, Webber & Stevens
221 Stewart Ave., Suite 209
Medford, OR 97501
(541) 371-9636
772-9850

       Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1 - OPINION AND ORDER

KATHRYN A. MILLER
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA  98104-7075
(206) 615-2240

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff brings this action for judicial review of the Commissioner's May 26, 2010, final decision denying her September 28, 2006, application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. She seeks an order from the court remanding this matter for the immediate payment of DIB by the Commissioner.

     For the following reasons, I **REMAND** this matter to the Commissioner for further proceedings as set forth herein.

## BACKGROUND

     On September 28, 2006, Plaintiff filed an application in which she alleged she has been disabled since July 10, 2006, because of "chronic fatigue immune [dysfunction] syndrome."

     On February 4, 2009, an administrative law judge (ALJ) held a hearing at which plaintiff, plaintiff's mother, and a vocational expert testified.

     On February 17, 2009, the ALJ issued a written decision that plaintiff is capable of performing her past relevant work as a school secretary and, therefore, is not disabled.

On May 26, 2010, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, became the final decision of the Commissioner for purposes of judicial review.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a plaintiff is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).  <u>See also</u> 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since July 10, 2006.

At Step Two, the ALJ found plaintiff has fibromyalgia.  He also found it is a severe impairment.  20 C.F.R. § 404.1520(c).

At Step Three, the ALJ found plaintiff's fibromyalgia did not meet or equal a listed impairment.

The ALJ found plaintiff retains the residual functional capacity to perform the full range of light work.

At Step Four, the ALJ found plaintiff is able to perform her past relevant sedentary job as a school secretary.

Based on the above Findings, the ALJ found plaintiff is not disabled and, accordingly, is not entitled to DIB.

**LEGAL STANDARDS**

The plaintiff has the initial burden to prove she is disabled. <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 517 U.S. 1122 (1996). To meet this burden, the plaintiff must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's final decision must be affirmed if it is based on proper legal standards and the ALJ's findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all the evidence whether it supports or detracts from the Commissioner's final decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The court must uphold the decision, however, even if it concludes that evidence "is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

4 - OPINION AND ORDER

The Commissioner bears the burden of developing the record. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert</u>. <u>denied</u>, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

Plaintiff contends the ALJ erred in (1) failing to fully credit plaintiff's evidence regarding the nature, extent and severity of his impairments; (2) failing to give germane reasons for not crediting lay testimony of plaintiff's mother; (3) failing to give clear and convincing reasons for not crediting the medical opinion of treating physicians.

## EVIDENCE

The's court review of the Administrative Record includes the hearing testimony, plaintiff's work and earnings history reports,

5 - OPINION AND ORDER

a lay witness function report, and relevant medical records.

**Plaintiff's Evidence**.

On the hearing date, plaintiff was 52 years old.  She has three years of college and earned an Associate of Arts degree.

Former Employment.

Plaintiff was employed full-time as a college office manager from 1989 until July 2006 when she took a medical leave of absence.  She receives disability retirement benefits under the Oregon Public Employee Retirement System.

Physical Impairments/Limitations.

Plaintiff has received medical treatment on an infrequent basis because she lacks health insurance.  In February 2008 and January 2009, she was seen twice by David Dryland, M.D.  He diagnosed Fibromyalgia and prescribed Mirapex, a medication used to treat Parkinson's Disease.  She did not take the medication out of concern that it might exacerbate her kidney problems. Dr. Dryland also prescribed Xanax to help plaintiff sleep.

Plaintiff also received chiropractic treatment periodically from 2003 to 2007 from James Said, DC.  He diagnosed Chronic Fatigue Syndrome.

Daily Activities.

Plaintiff lives with her daughter and a grandchild.  She plays with the child occasionally and takes daily naps.  Her arms, shoulders, back, and legs always ache.  The aching is more

severe if she does not nap during the day.  The more tired she
becomes, the more difficulty she has concentrating, particularly
when she is reading.

Plaintiff is unable to stand for any significant length of
time because her legs become painful.  She does not believe she
is capable of working in an office environment because she tires
too easily.

**Lay Witness Evidence**.

Plaintiff's mother testified that plaintiff is always tired
and aches.  Plaintiff finds it hard to stay awake.  When she does
household chores, including mopping the floor or cooking dinner,
she needs to lay down frequently to take naps.  In addition,
Plaintiff's medication makes her nauseous.

**Vocational Expert Evidence**.

Vocational Expert Kent Granat testified that plaintiff's
past relevant employment involved sedentary, skilled work which
plaintiff would be unable to perform if her pain level constantly
interfered with her attention span.

**Medical Evidence - Treatment**.

James Said, D.C, N.D.

Dr. Said is a chiropractor who treated plaintiff from May
2003 until August 2007.  His treatment notes are sparse.

In November 2005, Dr. Said noted plaintiff had toxic mercury
levels and recommended that she remove "all mercury fillings."

7 - OPINION AND ORDER

In July 2006, plaintiff complained of aches, a sore throat, and stiffness in her arm and after she had been sitting. She was sleeping well and although she was unable to exercise, she went on walks.

In October 2006, plaintiff was "achy, fluish, nauseous, and dizzy" and was "not alert enough to drive." She was stressed out, tired, and slept poorly. She complained of leg pain and was out of breath when she climbed stairs.

In August 2007, Dr. Said diagnosed Fibromyalgia and Chronic Fatigue Syndrome and treated plaintiff with nutritional and dietary supplements. Her condition was "guarded" and "chronic."

In January 2009, Dr. Said filled out a questionnaire from plaintiff's counsel, in which he opined plaintiff had suffered from Chronic Fatigue Syndrome since April 2005. He noted she complained of short term memory and concentration impairments "severe enough to cause substantial reduction in [her] previous levels of occupational, educational, social, or personal activities." Dr. Said noted plaintiff had a sore throat, muscle and multiple joint pain, headaches "of a new type, pattern or severity" with "[u]nrefreshing sleep," and "malaise" that lasted for more than 24 hours after she exerted herself.

Dr. Said further opined that plaintiff was not a malingerer, but emotional factors contributed to the severity of her symptoms

8 - OPINION AND ORDER

and her functional limitations.  Plaintiff would frequently experience fatigue or other symptoms that were severe enough to interfere with her attention and concentration while performing simple work tasks; and she was incapable of working in low stress jobs.  She was able to walk only two city blocks before resting. She was able to sit for two hours at a time, stand for 30 minutes at a time, and stand/walk for less that two hours at a time.

Dr. Said opined that plaintiff is limited to jobs that would allow her to shift positions at will, take unscheduled breaks in order to lie down for up to two hours, lift no more than 10 lbs, never climb ladders or stairs, only rarely twist, stoop, or crouch, and, finally, to use her hands and fingers for grasping and/or fine manipulation, or reaching overhead, minimally (less than five percent of the working day).

Dr. Said opined any exposure of plaintiff to extreme temperatures, fumes, or a noisy workplace would increase her irritability and stress level.  He ultimately opined plaintiff would have no "good days" at work given her impairments.

David Dryland, M.D. - Rheumatologist.

In December 2006, Dr. Dryland first saw plaintiff for a consultation as to her complaint of fatigue, generalized aches and pains, but particularly in her upper arms and legs, abdominal pain, acid reflux, weakness, dizziness, and constipation.  On physical examination, plaintiff's gait was normal, her joints

revealed good stability, range of motion, and strength, and
without any effusion, warmth, or tenderness, except for "mild
10/18 tender points." Dr. Dryland diagnosed Fibromyalgia, to
which he attributed her chronic fatigue symptoms.

In February 2008, plaintiff told Dr. Dryland she was no
better than she was in 2006. She was stressed over "everything."
She told him her fatigue was more limiting than her pain. On
examination, plaintiff was well-developed, well-nourished, and
not in acute distress. Her examination was, for the most part,
normal - her joints were stable, she demonstrated good range of
motion and strength, without any effusions, warmth, and limited
tenderness. Plaintiff did not exhibit psychiatric symptoms.
Dr. Dryland prescribed medications to treat the Fibromyalgia.

In January 2009, Dr. Dryland responded to a questionnaire
from plaintiff's counsel in which he opined plaintiff suffers
from Fibromyalgia and that anxiety worsens her condition. Her
pain is caused by changing weather, fatigue, movement, cold,
stress and remaining in a static position. Dr. Dryland opined
plaintiff's pain would "constantly" interfere with her ability to
pay attention and concentrate in the workplace. As such, while
he did not complete a physical capacity evaluation, he opined
that plaintiff was incapable of performing even low stress work.

10 - OPINION AND ORDER

**Medical Evidence- Examination**.

Joseleeto U. Chua, M.D. - Neurologist.

On behalf of the Commissioner, in November 2006, Dr. Chua examined plaintiff to evaluate her neurological functioning in light of her alleged physical and psychological complaints, accompanied by worsening symptoms that included anxiety, change in mental functioning, extreme lethargy, poor concentration and recall, inability to learn new information, inability to focus even when driving, and poor tolerance for stress.

The neurological examination, which included short term recall and visuospatial testing, was unremarkable. Dr. Chua recommended plaintiff be examined by a rheumatologist and obtain mental health counseling for depression and anxiety. He also recommended neuropsychological testing to evaluate plaintiff's difficulty with memory.

Thomas Brent Shields, Ph.D. - Clinical Psychologist.

On behalf of the Commissioner, in November 2006, Dr. Shields examined plaintiff and reviewed certain records relating to plaintiff's medical history in order to evaluate her mental status. He found plaintiff to be well-spoken, polite, friendly, and cooperative, and her statements "appear fairly credible." Dr. Shields opined plaintiff "does not create the impression that she is malingering mental illness." He also opined, however, that plaintiff "might be relying on Somatization as her primary

11 - OPINION AND ORDER

defense mechanism and thus she may be guarded against the idea that she is prone to emotional distress."

Dr. Shields, however, found "there are no indications of problems with attention, concentration, or memory functioning" and plaintiff "is capable of understanding, remembering, and carrying out simple to moderately difficult instructions."  He diagnosed anxiety disorder NOS "to account for her mild anxiety- and mood-related symptoms."

Dr. Shields opined "from a cognitive perspective," plaintiff was able to sustain concentration, persistence, and pace during a full-time work week.  He also noted, however, a "need to rule out undifferentiated somatoform disorder to find out whether or not her fatigue-related complaints are out of proportion with the objective findings of the medical examination."

Dr. Shields diagnosed Anxiety Disorder NOS (mild depressive and anxiety symptoms), R/O Undifferentiated Somatoform Disorder. He assigned a GAF score of 70 (mild symptoms, or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships).

**Medical Evidence - Consultation.**

Martin Kehrli, M.D. - Internal Medicine.

In 2006, Dr. Kehrli reviewed plaintiff's medical records and her daily activities and concluded her statements were not fully

credible based on purported inconsistencies in reporting her
activities to treating physicians.  He opined plaintiff has no
significant impairment or loss of function and has no limitation
of physical capacity to work.

Linda Jensen, M.D. - Physical Medicine and Rehabilitation.

In 2007, Dr. Jensen reviewed plaintiff's medical records and
concurred in a finding that plaintiff's physical and mental
impairments were non-severe.

Dorothy Anderson, Ph.D. - Psychologist.

In 2006, Dr. Anderson reviewed plaintiff's medical records
and concluded she was not fully credible based on her purported
daily activities.  She opined plaintiff has no restrictions as to
daily living activities, no extended episodes of decompensation,
and has only mild difficulties in maintaining social functioning,
concentration, persistence or pace.

Frank Lahman, Ph.D - Psychologist.

In 2007, Dr. Lahman reviewed plaintiff's medical records
and concluded plaintiff has no difficulty as to her attention
span, concentration, and memory.  She was able to maintain
concentration, persistence and pace during a full-time work week.

**Vocational Expert Testimony.**

Vocational Expert Kent Granat testified that if Dr. Said's
opinion regarding plaintiff's workplace limitations is fully
credited, plaintiff would be unable to perform competitive work.

## ANALYSIS

### 1.   **Failure to Credit Plaintiff's Testimony.**

The ALJ found plaintiff suffers from the severe impairment of Fibromyalgia, which could reasonably be expected to produce the symptoms she alleges.  The ALJ, however, found plaintiff's testimony and evidence regarding the severity of her symptoms - lack of energy, the need to rest and lay down after trying to do housework because of aching in her arms and legs, were not credible because they are inconsistent with the residual functional capacity findings of examining psychologist Thomas Shields, Ph.D., who opined plaintiff had no problems with attention, concentration, or memory functioning, and only mild impairments relating to social, occupational, and/or school functioning.

Plaintiff contends the ALJ failed to give clear and convincing reasons for not crediting her testimony regarding the severity of her physical impairments.  I agree.

A plaintiff who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The plaintiff need not produce

objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the plaintiff produces objective evidence that underlying impairments could cause the pain complained of and there is not any affirmative evidence to suggest the plaintiff is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether the plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the plaintiff that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily activities. Id. at 1284 (citations omitted).

Here, there is no evidence in the record that plaintiff is a malingerer.  Moreover, the only medical practitioners who questioned plaintiff's credibility were consulting physicians who relied on the reports of treating and examining physicians, none of whom questioned plaintiff's credibility in any meaningful way. Dr. Shields, who examined plaintiff for the Commissioner, noted she was "fairly credible," and he attributed any inconsistencies

in her reporting of her physical impairments to a possible
Somatoform disorder, a psychological condition that did not bear
on her credibility.

On this record, the court concludes the ALJ failed to give
any clear and convincing reason for questioning plaintiff's
credibility.  His reliance on opinions of consulting physicians
who neither treated nor examined plaintiff before they decided
plaintiff was not credible was arbitrary and capricious in light
of the fact that those physicians who either examined or treated
her did not raise serious questions as to her credibility.

**2.    <u>Failure to Credit Lay Witness Evidence</u>.**

Plaintiff contends the ALJ failed to give germane reasons
for not crediting lay witness evidence of plaintiff's mother that
plaintiff was unable to do yard work.  I agree.

Lay witness evidence as to a plaintiff's symptoms "is
competent evidence that an ALJ must take into account" unless he
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>,
236 F.3d 503, 511 (9th Cir. 2001).

The ALJ rejected evidence from plaintiff's mother regarding
the extent of plaintiff's fatigue and the side-effects of
plaintiff's medications.  The ALJ did not credit this evidence on
the ground that it was not fully consistent with the medical
evidence and "other evidence of record."  To the contrary,

16 - OPINION AND ORDER

examining physician, Dr. Shield, did not exclude the possibility
that plaintiff's fatigue-related complaints were related to a
Somatoform disorder.  The only "medical evidence" or "other
evidence of record" to which the ALJ could have been referring
are the opinions of consulting physicians who never treated or
examined plaintiff.

On this record, I conclude the ALJ did not give a germane
reason for rejecting the lay evidence offered by plaintiff's
mother.

**3.    Failure to Credit Treating Physicians' Opinions**.

The ALJ rejected the 2009 opinion of treating chiropractor,
Dr. Said, that plaintiff would have no good days at work, and the
2009 opinion of rheumatologist, Dr. Dryland, that plaintiff was
incapable of performing even low stress work.

The ALJ reasoned that Dr. Said's opinion was not accompanied
by objective medical findings and was likely based on plaintiff's
self-report.  In addition, the ALJ gave less weight to Dr. Said's
opinion than the contrary opinion of Dr. Shields, an examining
physician, because Dr. Said is not a medical doctor.  The ALJ
reasoned that Dr. Dryland's opinion was inconsistent with his
chart notes from two years earlier that reflected plaintiff had
good range of motion, stability, and strength, and because his
opinion was inconsistent with the opinions of the two examining
physicians, Dr. Shields and Dr. Chua.

17 - OPINION AND ORDER

An ALJ may reject the uncontroverted opinion of a treating physician only by stating clear and convincing reasons that are supported by substantial evidence in the record. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)(as amended). An ALJ also may disregard the controverted opinion of a treating physician only by setting forth specific and legitimate reasons that are supported by substantial evidence in the record. <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003).

The Commissioner may consider evidence from sources who are not "acceptable medical sources," <u>e.g.</u>, nurse practitioners and chiropractors, "to show the severity of [an impairment] and how it affects [a claimant's] ability to work." 20 C.F.R. § 404.1513(d).

The record is clear that the ALJ relied on contrary opinions of examining physicians, Dr. Shields and Dr. Chua in deciding not to credit the opinions of treating physicians, Dr. Dryland and Dr. Said. Dr. Shields, however, indicated a "need to rule out undifferentiated somatoform disorder" to determine if plaintiff's "fatigue-related complaints [were] out of proportion with the objective findings of the medical examination" Dr. Chua also recommended plaintiff be examined by a rheumatologist and obtain mental health counseling for depression and anxiety, as well as neuropsychological testing to evaluate plaintiff's difficulty with memory.

18 - OPINION AND ORDER

On this record, the court agrees with the Commissioner that the disability opinions of Dr. Said and Dr. Dryland are based on sparse medical records and a lack of objective medical findings. The court, however, disagrees with the Commissioner that the ALJ's non-disability finding is supported by substantial evidence in the record.  As set forth above, Dr. Shields and Dr. Chua, who both examined plaintiff on behalf of the Commissioner, recommended further testing and examination to address whether plaintiff suffers from a Somatoform disorder and to address plaintiff's depression, anxiety, and memory lapses.

Accordingly, the court in the exercise of its discretion concludes this matter should be remanded to the Commissioner for further proceedings.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

The court concludes the Commissioner should follow the recommendations of Dr. Shields and Dr. Chua, as set forth above, and obtain further medical evidence as to whether plaintiff suffers from a Somatoform disorder and/or any other mental impairment that, in combination with her other impairments, precludes her from engaging in substantial gainful activity.

19 - OPINION AND ORDER

## CONCLUSION

For these reasons, the court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings as set forth above.

IT IS SO ORDERED.

DATED this 6  day of July, 2011.


                                        /s/ Malcolm F. Marsh
                                       MALCOLM F. MARSH
                                       United States District Judge


20 - OPINION AND ORDER